SLIP OP. 08-146

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————— :
GPX INTERNATIONAL TIRE :
CORPORATION and HEBEI :
STARBRIGHT TIRE CO., LTD., :
:
        Plaintiffs, :
    v. : Before: Jane A. Restani, Chief Judge
:
UNITED STATES, : Court Nos. 08-00285, 08-00286, 08-00287
:
        Defendant, :
:
    and :
:
BRIDGESTONE AMERICAS HOLDING, :
INC., BRIDGESTONE FIRESTONE :
NORTH AMERICAN TIRE, LLC, TITAN :
TIRE CORPORATION, and UNITED :
STEEL, PAPER AND FORESTRY, :
RUBBER, MANUFACTURING, ENERGY, :
ALLIED INDUSTRIAL AND SERVICE :
WORKERS INTERNATIONAL UNION, :
AFL-CIO-CLC, :
:
        Defendant-Intervenors. :
————————————————————:

## OPINION

[Plaintiffs' motion for amendment of judgment or rehearing denied.]

Dated: December 30, 2008

      Winston & Strawn, LLP (Daniel L. Porter, James P. Durling, and Matthew P. McCullough); Hinckley Allen & Snyder LLP (Eric F. Eisenberg); Orrick, Herrington & Sutcliffe LLP (John A. Jurata, Jr.) for the plaintiffs.

      Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (John J. Todor and Loren M. Preheim); Irene H. Chen and Matthew D. Walden, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel; James M. Lyons, General Counsel, Andrea C. Casson, Assistant General Counsel,

U.S. International Trade Commission (<u>Rhonda M. Hughes</u> and <u>Peter L. Sultan</u>) for the defendant.

      <u>King & Spalding, LLP</u> (<u>Joseph W. Dorn</u>, <u>Christopher T. Cloutier</u>, <u>Daniel L. Schneiderman</u>, <u>J. Michael Taylor</u>, and <u>Kevin M. Dinan</u>); <u>Stewart and Stewart</u> (<u>Wesley K. Caine</u>, <u>Elizabeth A. Argenti</u>, <u>Elizabeth J. Drake</u>, <u>Eric P. Salonen</u>, <u>Geert M. De Prest</u>, <u>Terence P. Stewart</u>, and <u>William A. Fennell</u>) for the defendant-intervenors.

      Restani, Chief Judge: Plaintiffs GPX International Tire Corporation ("GPX") and Hebei Starbright Tire Co., Ltd. ("Starbright") (collectively, "plaintiffs") move for reconsideration or a rehearing of the court's decision in <u>GPX International Tire Corp. v. United States</u>, Slip Op. 08-121, 2008 WL 4899523 (CIT Nov. 12, 2008), denying plaintiffs' motion for a temporary restraining order and preliminary injunction.  GPX, a domestic importer of certain off-the-road ("OTR") tires, and Starbright, a foreign producer and exporter of certain OTR tires, alleged that collection of full antidumping duty ("AD") and countervailing duty ("CVD") deposits would cause irreparable harm and sought to post some security until further litigation or an administrative review altered the situation.  In denying plaintiffs' motion, the court found that plaintiffs had not demonstrated a likelihood of success on the merits in achieving a negative injury determination or a smaller AD and CVD rate so as to prevent the alleged irreparable harm.[1]

      Plaintiffs now seek reconsideration pursuant to USCIT R. 59,[2] alleging that because the court specifically found that GPX would suffer irreparable harm and found a

---

[1] Familiarity with the court's November 12, 2008 opinion is presumed.

[2] USCIT Rule 59(a)(2) provides that a "rehearing may be granted . . for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States."

likelihood of success on the merits for at least some individual issues in the CVD and AD

determinations, injunctive relief was warranted.  Alternatively, plaintiffs seek a rehearing to

submit evidence concerning the effect of the Department of Commerce's ("Commerce") alleged

error on the AD margin.  Defendants Commerce and the International Trade Commission

("ITC") and defendant-intervenors Bridgestone Americas Holding, Inc., Bridgestone Firestone

North American Tire, LLC, Titan Tire Corporation, and United Steel, Paper and Forestry,

Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union,

AFL-CIO-CLC (collectively, "defendant-intervenors") contend that plaintiffs have not

demonstrated a manifest error of law or fact to justify reconsideration and that regardless, the

new margins calculated by plaintiffs would not provide meaningful relief as they still will not

prevent plaintiffs' alleged irreparable harm.  For the reasons discussed below, the court denies

plaintiffs' motion.

## STANDARD OF REVIEW

              A rehearing will be granted "only in limited circumstances," such as for "1) an

error or irregularity, 2) a serious evidentiary flaw, 3) the discovery of new evidence which even a

diligent party could not have discovered in time, or 4) an accident, unpredictable surprise or

unavoidable mistake which impaired a party's ability to adequately present its case."  Target

Stores v. United States, 471 F. Supp. 2d 1344, 1347 (CIT 2007) (citing Kerr-McGee Chem.

Corp. v. United States, 14 CIT 582, 583 (1990)).  The grant or denial of a motion for

reconsideration is within the discretion of the court, id., and will not be granted "merely to give a

losing party another chance to re-litigate the case or present arguments it previously raised,"

Totes-Isotoner Corp. v. United States, 580 F. Supp. 2d 1371, 1374 (CIT 2008) (internal

quotations and citation omitted).

## DISCUSSION

This dispute arose from Commerce's calculations of an AD rate of 29.93% and a CVD rate of 14% for Starbright in its final determinations concerning OTR tires from the People's Republic of China ("PRC"). See Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Notice of Amended Final Affirmative Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 73 Fed. Reg. 51,624, 51,625 (Dep't Commerce Sept. 4, 2008); Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Negative Determination of Critical Circumstances, 73 Fed. Reg. 40,480, 40,483 (Dep't Commerce July 15, 2008). Plaintiffs sought a temporary restraining order and a preliminary injunction, alleging that imposition of the approximate 44% cash deposit requirement would cause irreparable harm to GPX.

For purposes of the preliminary injunction motion, the court assumed that, as alleged by plaintiffs, "GPX established irreparable harm attributable to any deposit rate above the 10–15% range." GPX Int'l Tire Corp., Slip Op. at 21. Contrary to plaintiffs' assertions here, the court did not find that plaintiffs had demonstrated a likelihood of success on the merits of Commerce's AD and CVD determinations.

With respect to the merits of the AD determination, the court was "greatly concerned," given Commerce's imposition of CVD duties based on market-oriented changes in the PRC, that Commerce did not even consider market-oriented-enterprise ("MOE") treatment for Starbright. Id. at 14. Plaintiffs, however, did not provide an estimate of what the margins

likely would have been if Commerce had granted Starbright MOE treatment and the court could not determine whether the AD cash deposit rate likely would be reduced to a level sufficient to prevent plaintiffs' claimed irreparable harm. Id. at 15–16.

   In addressing the merits of the CVD determination, the court acknowledged that application of CVD duties in this case raised "grave questions" both in terms of statutory interpretation and fairness concerning the ability of Commerce, under 19 U.S.C. §§ 1671, 1677(5), to apply non-market economy ("NME") procedures to PRC merchandise in the AD context while at the same time applying CVD measures to the same goods. See id. at 17. The court found, however, that even "[a]ssuming that plaintiffs have established that there is sufficient likelihood that the duty deposit rate should be approximately 30% rather than 44%, based on a reduction for eliminated CVD, . . . plaintiffs cannot prevail." Id. at 21 (emphasis added). Because "there has been no showing of a likelihood of success on the merits on the ITC's affirmative injury determination or Commerce's AD determination" sufficient to reduce the likely combined duty rate to close to the 10–15% level, no meaningful relief could be provided. Id.

   Plaintiffs now argue that providing an estimate of what the margins likely would have been if Commerce had granted Starbright MOE treatment places them in an "impossible 'Catch 22' situation," because they were unable to show the effect of the AD margin due to Commerce's refusal to undertake the calculation. (Pls.' Mot. for Amendment of J. or Reh'g ("Pls.' Br.") 3.) Plaintiffs ask the court to take judicial notice that "AD rates calculated using market economy antidumping rules are typically much lower than AD rates calculated from Commerce's NME methodology" and direct the court to a recent report by the U.S. Government

Accountability Office ("GAO").  (Id. at 3–4.)  Additionally, plaintiffs allege that demonstrating

the actual effect on the AD margin conflicts with Queen's Flowers de Colombia v. United States,

947 F. Supp. 503 (CIT 1996), where the court did not require the plaintiffs to calculate what the

AD rate would have been had Commerce properly utilized the submitted company databases and

questionnaire responses.  (Id. at 4–5.)

   While plaintiffs may be faced with a heavy burden, it is not an impossible one.

Without such a calculation the court is unable to determine if use of an MOE methodology

would have significantly affected plaintiffs' AD rate.  Additionally, even if the court were to

allow admission of the GAO study at this late date, the study does not indicate the extent to

which plaintiffs' AD rate would be reduced if an MOE treatment were used.  Without such

knowledge, the court cannot determine if plaintiffs' likely AD rate would be reduced to a level

sufficient to prevent the alleged irreparable harm.  Further, Queen's Flowers is inapplicable here,

as the court in Queen's Flowers was not asked to estimate the maximum amount of cash deposits

importers could post before suffering alleged irreparable harm.

   In the alternative, and likely demonstrating that the calculations are not beyond

them, plaintiffs submit a declaration from their litigation consultant, Ms. Valerie Owenby,

containing projections of the AD rates that they allege would have been applied if Commerce

had used an MOE methodology for GPX.  (Pls.' Br., Attach. 1.)  Defendants argue that the court

should reject this analysis because plaintiffs did not present this to the court in their motion for a

preliminary injunction and it is also hearsay, rather than testimony subject to cross-examination.

(Def.'s Resp. to Pls.' Mot. for Amendment of J. or Reh'g 6–7.)  Plaintiffs attempt to avoid this

evidentiary problem by offering to make Ms. Owenby available for direct and cross-examination

at an evidentiary hearing.  (Pls.' Br. 7.)

While "[t]he purpose of a rehearing is not to relitigate a case," <u>Kerr-McGee</u>, 14 CIT at 583, even if the court were to consider the merits of this declaration and accept plaintiffs' calculation as true, plaintiffs still would be unable to demonstrate a likelihood of success on the merits sufficient to prevent the claimed irreparable harm.  Plaintiffs appear to misunderstand that the court's concern with Commerce's application of NME procedures to PRC imports in the AD context was predicated on the fact that Commerce had also applied CVD measures to PRC goods.  The court questioned whether the two were mutually exclusive, and envisioned two possible scenarios.  If plaintiffs were likely to succeed on their MOE argument in the AD context, then plaintiffs would likely be subject to the full CVD duties.  Alternatively, if plaintiffs were likely to prevail in the CVD context, then plaintiffs would likely be subject to the full NME AD duties.

Plaintiffs cannot have it both ways.  If the court were to assume that plaintiffs' new calculation of the AD margin using MOE procedures is correct and apply an AD rate of 15.8%, there would be no reason to eliminate the CVD margin.  Thus, plaintiffs's new margin using the AD rate of 15.8% and the prior CVD rate of 14% would result in a 29.8% cash deposit rate.  As plaintiffs have asserted consistently that they will be irreparably harmed by any cash deposit rate over 10–15%, and also that they cannot provide the normal type of security for the remainder, the court remains unable to provide any meaningful injunctive relief here.

## CONCLUSION

Plaintiffs have failed to identify any legal error in the court's opinion and have not demonstrated how any preliminary injunction which the court might order would provide any

Court Nos. 08-00285, 08-00286, 08-00287                                    Page 8

meaningful relief.  The court will not impose extraordinary injunctive relief, which necessarily

adversely impacts other parties, for no purpose.  Accordingly, the balance of factors does not

favor plaintiffs, and plaintiffs' motion for amendment of judgement or rehearing is denied.


                                                    ___/s/ Jane A. Restani____
                                                    Jane A. Restani
                                                    Chief Judge


Dated: This 30th day of December, 2008.
       New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____        By: _____
                                              Deputy Clerk